IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CARRIE K. VINGELEN and WILLIAM L. KLINE, II, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 3:09-cv-00540 |
| ELIZABETH C. WEAVER, | ) | Judge Thomas A. Wiseman, Jr. |
| Defendant. | ) | |

<u>MEMORANDUM OPINION</u>

This action was originally filed in the Chancery Court for Davidson County, Tennessee on May 13, 2009, seeking equitable relief only, concerning the disposition of the assets of an Annuity Contract (the "Hartford Annuity") "residing in" the William L. Kline Individual 401(k) Plan (Account No. 712117586) (the "Plan"), and of a life insurance policy insuring the life of William L. Kline, deceased. Plaintiffs and Defendant are, respectively, the children and the widow of the late Mr. Kline. Defendant removed the matter to this Court on June 10, 2009, alleging that the Hartford Annuity, the Plan, and possibly the life insurance policy are subject to the requirements of, and governed by, the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"), and that insofar as Plaintiffs' state-law claims relate to or are based upon plans that are governed by ERISA, they are completely preempted by the federal statutory scheme.

Now before the Court are two motions: (1) Defendant's Motion for Partial Summary Judgment (Doc. No. 7); and (2) Plaintiffs' Motion to Remand and for Attorneys' Fees or, in the Alternative, for Summary Judgment (Doc. No. 25). In support of her motion, Defendant argues that the disposition of the proceeds of the Hartford Annuity, which continue to be held in trust as assets of the 401(k) Plan, is governed entirely by ERISA, and that Plaintiffs' state-law claims concerning the assets of the 401(k) Plan are completely preempted by ERISA and subject to dismissal on that basis. Plaintiffs, in response to Defendant's motion and in support of their own, maintain that the Plan is not covered by ERISA at all and that, as a result, subject-matter jurisdiction in this Court is lacking, such that the case must be remanded to state court. Plaintiffs also seek attorneys' fees incurred in connection with their motion to remand.

Plaintiffs argue in the alternative that if the 401(k) Plan is subject to ERISA, they are the beneficiaries of the Plan's assets and the Court should award the proceeds of the Plan to them.

As set forth below, the Court finds based upon the undisputed facts in the record that the Plan is not an employee benefit plan or welfare plan governed by ERISA. As a result, ERISA preemption is not possible, and no basis for removal jurisdiction exists. Plaintiffs' motion to remand will therefore be granted and Defendant's motion for summary judgment denied as moot, the Court having determined that it lacks subject-matter jurisdiction. However, the Court further finds that the removal was not completely objectively unreasonable, and will therefore not exercise its discretion to award attorneys' fees.

I.       FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Carrie K. Vingelen and William L. Kline, Jr. are the children of Defendant Elizabeth C. Weaver's recently deceased husband, William L. Kline ("Mr. Kline"). Mr. Kline died on February 1, 2009. On May 13, 2009, Plaintiffs filed their Verified Complaint in this action in the Chancery Court for Davidson County, Tennessee. Defendant removed the action to this Court on June 10, 2009 on the basis of alleged ERISA preemption.

According to the undisputed facts in the record, Mr. Kline was, for more than thirty years prior to his death, engaged in the business of selling life insurance and annuities to individuals. He was also a registered representative with a national broker-dealer through which he sold securities. Beginning in the 1990s, Mr. Kline was an active and, later, a retired Field Representative for Guardian Life Insurance Company. Beginning in 2002, he maintained his office in his and Defendant's home. While working from home, Mr. Kline employed Ms. Cheri Bass as his full-time personal assistant in connection with his insurance and brokerage business. Until January 1, 2009, Guardian actually paid Ms. Bass's salary and provided certain employee benefits to her, including a retirement plan. Mr. Kline reimbursed Guardian for Ms. Bass's salary, payroll taxes and benefit expenses. Mr. Kline also paid annual bonuses directly to Ms. Bass.

Mr. Kline established the 401(k) Plan that is the primary focus of Plaintiffs' claims in January 2004. (*See* Doc. No. 2803, at 9–10 ("The Hartford Individual 401(k) Program Qualified Retirement Plan Super Simplified 401(k) Standardized Adoption Agreement").) He executed amended and restated Plan documents in 2008. (*Id.* at 4–7 ("Individual 401(k) Plan Standardized Adoption Agreement").) Although

the Plan was denominated a 401(k) Plan, Mr. Kline executed the documents naming himself as the employer, owner, trustee and, most critically, the sole "participant" in the Plan. (*See id.* at 15 ("The Hartford Individual 401(k) Program General Information Worksheet" designating William L. Kline as the sole participant in the Plan).) The records further indicate that Mr. Kline's contributions to the Plan were entirely voluntary, and the amount of each contribution wholly within his discretion. Ms. Bass has submitted an affidavit in which she attests that she knew she was not a "participant" in Mr. Kline's 401(k) Plan and did not expect or intend ever to become a participant in the Plan. She further understood that the Plan was intended to benefit solely Mr. Kline, and she herself makes no claim to any of the proceeds of the Plan. (*See* Doc. No. 28-2, 7/13/2009 Aff. of C. Bass ¶ 4.)

In any event, according to the facts alleged in the Verified Complaint, Defendant and Mr. Kline signed a letter of understanding on August 1, 2008, articulating their intent to provide for one another after the death of the first spouse, specifically "to provide additional income for one another during the lifetime of the surviving spouse who is entitled to spend no more than 5% annual to preserve the principal." (Doc. No. 1-1, at 28, Ex. 2 to Verified Compl.) In a handwritten note entered in his estate-planning records the same day, Mr. Kline wrote: "executed a letter of understanding Beth [Defendant] that allows us to receive up to $500,000 at each others death to provide 5% income until the surviving spouse dies, then the principal goes to our respective children to keep our estates intact for them." (Doc. No. 1-1, at 30, Ex. 3 to Verified Compl.) Shortly thereafter, Mr. Kline executed an "Annuity Beneficiary Change Request" form, indicating that Defendant would be the 100% beneficiary of the Plan's proceeds in the event of Mr. Kline's death. Plaintiffs, who had previously each been identified as a 50% beneficiary, became contingent beneficiaries. (Doc. No. 28-3, at 30–31.) On August 19, 2008, Mr. Kline received written confirmation of the changes he had requested from the Hartford. (Doc. No. 1-1, at 32, Ex. 4 to Verified Compl.) On his copy of the confirmation from the Hartford, Mr. Kline wrote "@ 5%/yr" next to the designation of Defendant as the 100% beneficiary. (*Id.*)

Defendant is the successor trustee and administrator of the 401(k) Plan. In that capacity, on February 25, 2009, she requested liquidation of the Hartford Annuity. (Doc. No. 28-3, at 32–34 ("Individual (k) Plan Deconversion Authorization Form").) The Hartford complied with her request and surrendered the proceeds by issuing a check made out to the order of "W. Kline Individual 401k." (Doc.

No. 28-3, at 37.) Those funds, pursuant to an order issued by the Chancery Court on May 20, 2009, are currently deposited in an account at Regions Bank in the name of William L. Kline Individual 401(k) Plan, said funds to remain there pending further orders of the Chancery Court.

Plaintiffs seek injunctive relief and the imposition of a constructive and resulting trust on the proceeds of the Hartford Annuity for the purpose of ensuring that Defendant will be limited to receiving no more than 5% per year of the proceeds for each year she survives Mr. Kline, with the remainder payable to Plaintiffs. Plaintiffs assert other claims that are not at issue here.

## II.     STANDARD OF REVIEW

Under 28 U.S.C. 1447(c), cases originally filed in a state court must be remanded if, at any time before trial, it appears that the federal district court to which they were removed lacks subject matter jurisdiction. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) ("[I]n a removed action, upon determination that a federal court lacks jurisdiction, remand to state court is mandatory."). Because the determination of federal jurisdiction in a diversity case is made as of the time of removal, *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453 (6th Cir. 1996), a court's ruling on a motion to remand will rest on whether the case was properly removed to federal court in the first place. *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871-72 (6th Cir. 2000) (citing *Ahearn*, 100 F.3d at 453). The party seeking removal bears the burden of showing that proper subject-matter jurisdiction exists. *Id.*

## III.     ANALYSIS AND DISCUSSION

### A.     ERISA Does Not Apply to the "401(k) Plan."

Defendant argues strenuously that the so-called "401(k)" Plan at issue in this case is an employee pension plan governed by ERISA, such that Plaintiffs' state-law claims regarding the Plan are completely preempted by § 502(a) of ERISA. Plaintiffs maintain that the Plan does not fall within the purview of ERISA. The Court agrees.

ERISA was designed to provide uniform federal regulation of employee benefit plans and to promote the interests of employees and the beneficiaries of such plans. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90–91 (1983). ERISA imposes participation, funding and vesting requirements on pension plans and sets various uniform standards including rules concerning reporting, disclosure, and fiduciary responsibility, for both pension and welfare plans. *Id.* at 91. Since the desired uniformity could not be

achieved if ERISA plans were subject to varying state regulations, Congress included safeguards to preclude abuse and frustration of the comprehensive federal regulation it established. *Ingersoll-Rand v. McClendon*, 498 U.S. 133 (1990). Prominent among these safeguards is an expansive preemption provision, found at section 514(a) of ERISA, 29 U.S.C. § 1144(a).

Section 514(a) is deliberately expansive and "conspicuous for its breadth." *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990). The preemption provision has been described as being "virtually unique" among preemption statutes, *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 24 n.26 (1983), and as "one of the broadest preemption clauses ever enacted by Congress." *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1439 (9th Cir.1990). Under this provision, ERISA supersedes "any and all State laws insofar as they . . . *relate to any employee benefit plan.*" 29 U.S.C. § 1144(a) (emphasis added).

In *Shaw v. Delta Air Lines*, 463 U.S. 85, 97 (1983), the Supreme Court determined that "relate to" should be given a broad common-sense meaning and that a state law need not be specifically designed to affect ERISA plans in order to be preempted. Further, a state law does not need to relate directly to the subjects covered by ERISA in order to "relate to" the statutory scheme for preemption purposes; any connection may trigger preemption. *Id.* Finally, a state law is preempted if it relates to ERISA even if the state law is "consistent with ERISA's substantive requirements" or was enacted to effectuate ERISA's underlying purpose. *Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724, 739 (1985). As Defendant points out, the Supreme Court has repeatedly confirmed that "[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." (Doc. No. 8, at 4–5 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987)). Thus, "any state-law cause of action that duplicates, supplements or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) (emphasis added); *see also Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 143–45 (1990).

Notwithstanding their breadth, ERISA's preemption provisions are not without limit. In that regard, the operative question is whether the claim in question is "in essence" a claim "for the recovery of

an ERISA plan benefit." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991). The initial question posed in the case before this Court is whether Mr. Kline's Plan is the type of plan that is governed by ERISA. If it is not an ERISA-governed plan, then Plaintiffs' state-law claims regarding the Plan cannot be deemed to "relate to" ERISA and therefore will not be preempted.

Under ERISA, the terms "employee welfare benefit plan" and "welfare plan" are defined as:

> any plan, fund, or program which has heretofore or is hereafter established or maintained *by an employer or by an employee organization, or by both*, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . benefits in the event of sickness, accident, disability, death or unemployment. . . .

29 U.S.C. § 1002(1) (emphasis added); *accord* 29 U.S.C. § 1003(a) (providing that ERISA subchapter I applies to "any employee benefit plan if it is established or maintained . . . by any employer . . . , by any employee organization or organizations . . . , or by both"). In other words, if the plan was not established by an *employer* or an *employee organization* "with the intent of providing benefits to [the employer's] employees," *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 435 (6th Cir. 1996) (citations and internal quotation marks omitted), then the plan at issue is not governed by ERISA.

In the present case, although the plan was denominated as a "401(k) plan," it clearly was not a plan established by an employer for the benefit of its employees. As indicated above, the Plan was established by Mr. Kline and funded by Mr. Kline for the purpose of benefiting Mr. Kline in preparing for his own retirement which, tragically, he did not live to enjoy. Mr. Kline was owner, employer, trustee, administrator and *sole participant* of the Plan. The parties have spilled a significant quantity of ink arguing about whether Mr. Kline's personal assistant was his employee such that she would have been covered by the Plan. Specifically, Defendant alleges that, based upon the terms of the Plan documents, Mr. Kline's 401(k) Plan "covered and provided benefits not only to Mr. Kline, but also to any employee of Mr. Kline." (Doc. No. 9, Def.'s Statement of Undisputed Facts ¶ 19.) Based upon that contention, Defendant argues that Mr. Kline's personal assistant, Cheri Bass, worked as Mr. Kline's full-time employee. Defendant does not argue or suggest that Ms. Bass was actually a Plan participant, however, nor does she offer support for the implication that any employee of a plan owner is automatically also a participant in that plan. In fact, a "participant" is defined by ERISA as "any employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7);

*accord* 29 C.F.R. § 2510.3-3(d) (indicating that an employee who is not designated by the plan as a participant is, in fact, not a participant). There are no simply no facts in the record before this Court that would support a conclusion that Ms. Bass was a participant in Mr. Kline's Plan.

As a result, the authority upon which Defendant relies does not help her cause, as that authority makes it clear that the operative question is whether the Plan at issue covered any *participants* other than Mr. Kline. For instance, in *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, the Supreme Court held that the sole shareholder and president of a professional corporation, in his capacity as working owner, could qualify as "participant" in an ERISA pension plan sponsored by his corporation, because, "[f]rom the Profit Sharing Plan's inception, at least one person other than Yates or his wife was a *participant*." 541 U.S. 1, 8 (2004) (emphasis added). The Court noted that, pursuant to the ERISA regulations, "[p]lans that cover only sole owners or partners and their spouses, the regulation instructs, fall outside Title I's domain." *Id.* at 21. The referenced regulation states in pertinent part:

> For purposes of title I of the Act and this chapter, the term "employee benefit plan" *shall not include* any plan, fund or program . . . under which no employees are *participants covered under the plan*, as defined in paragraph (d) of this section. For example, a so-called "Keogh" or "H.R. 10" plan under which only partners or only a sole proprietor are *participants* covered under the plan will not be covered under title I. However, a Keogh plan under which one or more common law employees, in addition to the self-employed individuals, are *participants* covered under the plan, will be covered under title I.

29 C.F.R. § 2510.3-3(b) (emphasis added). *Accord* DOL Opinion Letter 77-10, 1977 WL 5411, at *1 ("Under Department regulations (29 CFR 2510.3-3(b)), the term 'employee benefit plan' does not include, for purposes of Title I, any plan in which . . . only a sole proprietor and his or her spouse are *participants* covered under the plan. . . . However, a Keogh plan in which one or more common law employees are *participants* covered under the plan is covered under Title I." (emphasis added)).

Mr. Kline was the sole participant in his Individual 401(k) Plan. Consequently, that Plan is not an employee benefit plan or an employee welfare plan covered or protected by ERISA. Because the Plan is not an ERISA-governed plan, Plaintiffs' claims cannot be deemed in any sense to relate to ERISA or to interfere with ERISA's enforcement scheme, thereby obviating the basis for Defendant's removal of the matter to this Court. No other grounds for federal subject-matter jurisdiction having been presented, this Court is stripped of subject-matter jurisdiction. Plaintiffs' motion to remand must therefore be granted pursuant to 28 U.S.C. § 1447. Defendant's motion for summary judgment on the grounds of ERISA

preemption will be denied as moot.

**B.** **Whether Plaintiffs Are Entitled to Attorneys' Fees**

Under 28 U.S.C. § 1447(c), "an order remanding the case may require payment of just costs and any actual expenses, including attorneys' fees, incurred as a result of the removal." The Supreme Court recently clarified the legal standard governing a district court's discretion in granting attorneys' fees under § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.*; *see also Bartholomew v. Town of Collierville*, 409 F.3d 684, 687 (6th Cir. 2005), ("[A]n award of costs, including attorney fees, is inappropriate where the defendant's attempt to remove the action was 'fairly supportable,' or where there has not been at least some finding of fault with the defendant's decision to remove.").

As at least one other court within this Circuit has had occasion to note, "many cases from other circuits and even within the Sixth Circuit present a confusing picture of ERISA jurisdiction." *Pentech Infusions, Inc. v. Anthem Health Plans of Ky., Inc.*, 387 F. Supp. 2d 712, 714 (W.D. Ky. 2005). Although the outcome of this particular case seems obvious now, an argument to the contrary was not objectively unreasonable. In fact, neither party coherently addressed the basis upon which this Court ultimately reached its decision. The Court will therefore not exercise its discretion to order any payment of Plaintiffs' fees or costs.

**IV.** **CONCLUSION**

An appropriate Order granting Plaintiffs' motion to remand, but denying the motion for fees and denying Defendant's motion for summary judgment will enter separately.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge